All right. While folks are moving around to get settled, I will just note that our next case is No. 23-1733, J.H. v. Harford Mutual Insurance Group. I see we have divided argument for the appellants, so please do not hesitate to let me know if I get this wrong, but I believe the first person we're going to hear from is Mr. Bolfer. Take a minute to get settled and come up to the lectern whenever you're ready. Your Honor, before I get started, I note that the timer says 10 minutes, and I was told I was to keep account of my own separation of time. So what I have down on this sheet, just so we're all on the same page, is that my understanding is you have a total of 12 minutes, 10 minutes for your initial argument, then your colleague has 8 minutes, then you have 2 for rebuttal. Is that what you intended to do?  So that does not include your rebuttal time. That is your initial 10 minutes. But it does include all of my time. Your initial 10 minutes, yes. May it please the Court. My name is William Bolfer, and along with my law partner Dan Strong, I represent Harford Mutual Insurance Company. Magistrate Auld's decision to ignore the face of the underlying complaint and look beyond the plain and unambiguous language of the exclusion at issue improperly bound Harford Mutual Insurance Company to a risk that it never contracted to guard against. The bodily injury in this case that is identified in the underlying complaint is inextricably intertwined with the ownership, operation, and use of the motor vehicle in question. What Harford Mutual Insurance Company is asking . . . Well, negligent entrustment is a different tort from negligent operation of a car, right? It is a different tort, yes, Your Honor. However, the tort of negligent entrustment requires under North Carolina law, as the Court of Appeals in 1998 discussed in Coble v. Knight, requires ownership as a necessary element of that tort. So why didn't they say negligent entrustment when they were doing the exclusion? The short answer, Your Honor, is they didn't have to because the . . . So why did they say it in the aircraft exclusion? Why did they say it in the aircraft exclusion? There are a number of reasons they would say it in a subsequent exclusion, none of which, as the Supreme Court in the Wachovia Bank and Trust v. Westchester Fire Insurance Company Supreme Court decision for North Carolina, are relevant to this court's decision on whether the exclusion itself applies. So let me put it this way. Assuming that the automobile liability exclusion by its terms is enough to preclude a negligent entrustment claim by itself, why does that not mean that the words, let's see, that involving entrustment of others in the aircraft exclusion, why aren't those words completely superfluous because you could strike those words and the aircraft provision would mean exactly the same thing? A number of reasons, Your Honor. First of all, as the Wachovia matter discussed, to insert a provision which will eliminate the remotest possibility of litigation upon a given theory is not a recognition of the reasonableness of that theory in procuring coverage. Sure, but that's an argument for leaving the words entrustment to others out of this agreement entirely. What I don't understand is why they include it in some provisions and not others. I don't know what the theory of why you would do that is. Certainly. So the Seventh Circuit in Standard Mutual versus Bailey actually had the same curiosity. They said, we find it curious that in view of the plethora of litigation on this issue, the insurance industry hasn't simply added the word entrustment. No, no, but that's an argument about a contract that doesn't have entrustment at all. What I still don't think you've answered is in what universe does it make sense to include entrustment in some provisions but not include it in others if the proper interpretation of the agreement is that you never need to include entrustment at all. That doesn't make any sense to me. Because they're separate exclusions. But it's one contract. Do you think people are more likely to lend their airplane to somebody than their car? So in complete candor, I haven't looked at all the ins and outs of airline risk and underwriting sort of rules that would go into the development of that particular exclusion. Also, the record has nothing about underwriting in it. What it does have is a clear indication of what this exclusion says. Well, if we read this exclusion in isolation, that would be true. But North Carolina law says you read the contract in its entirety. You don't read one exclusion. And at a minimum, I think it creates ambiguity. And under North Carolina law, we are told that we need to construe all ambiguities against the drafter, against the insured, in favor of the insured, against the insurer. So even if we were to agree with you that this one provision is clear, the entirety of the contract does create ambiguity. So respectfully, Your Honor, that is the North Carolina Farm Bureau v. Martin case. The North Carolina Supreme Court decision from 2020 says the opposite of that. What it says is you don't get to the other portions of the contract in that harmonious discussion unless the exclusion itself is ambiguous. In this situation, the exclusion is unambiguous. Don't you have an obligation to give every term of the policy some meaning? Not when you're looking at other exclusions that relate to a wholly unrelated risk. The risk here is a motor vehicle risk. The accident here is a motor vehicle accident. And one need look only at the actual allegations of the second amended complaint and specifically the negligent entrustment allegations in that complaint. So let's discuss what the plaintiffs in the underlying complaint alleged. At Joint Appendix 41, Paragraph 91, the underlying plaintiffs allege ownership. They allege that the vehicle was being operated. And they allege that that ownership and that operation resulted in bodily injury to the plaintiff. Those are the exact same words in this exclusion that bar coverage for these types of claims. Can I just ask a question? Are you and your colleague dividing that? Is he doing the interest issues? Yes, sir. Okay, thank you very much. I just wanted to make sure. Oh, okay. I wanted to make sure if I had some questions on the interest who I asked the questions about the interest. That would be Mr. Strong, Your Honor. Okay, great. Thank you. I could attempt to answer them, but they probably wouldn't be as good. Carry on. So when we look at that exclusion, we look at the plain reading of the complaint itself. They overlay completely. There is no ambiguity. What Judge Auld did was he looked beyond that exclusion to create an ambiguity by reaching into a completely unrelated exclusion. You don't look at asbestos exclusions to decide what an auto exclusion does. You don't look at watercraft exclusions to see what an auto exclusion does. You look at the auto exclusion. See, I was with you on the first one of those. That was a good line. You don't look at asbestos to decide what the auto. And my answer is because those seem like they have nothing to do with each other. But I don't know. Like, I might look at a provision about vehicles to decide what a provision about vehicles means. That doesn't strike me as at all strange. So even if Your Honor finds that those things are not strange, that you do look at the aircraft exclusion and the auto exclusion, what you need to look at is the particular allegations of this complaint. And you need to look at how those allegations relate to the exclusion that we are discussing. The exclusion we're discussing, which is contained on page 186 of the joint appendix, says, it is agreed that this policy shall not apply for bodily injury. We all agree that this is a bodily injury case. The face of the plaintiff's complaint has a picture of a motor vehicle accident that shows how that bodily injury took place. Then it says, it shall not apply to bodily injury, personal injury, or property damage arising out of the ownership. Ownership is a required element of pleading for negligent entrustment. Maintenance, operation. We need look only again at that complaint to see that the vehicles in question were being operated at the time of loss. Under North Carolina law, who bears the burden of proof on whether or not an exclusion applies? Once the plaintiffs have fallen within coverage, or once the insured falls within coverage, Your Honor, the insurer carries the burden or holds the burden of proving that an exclusion applies. The problem with- So your client bears the burden of proving that this exclusion applies?  However, if you look at Judge Auld's decision, the very act that Judge Auld found gave rise to coverage in the first place. That deals with the underlying plaintiff's burden, or rather the insured's burden in this case, was the occurrence and bodily injury that resulted from that occurrence. What is that occurrence? It is the use of a motor vehicle giving rise to bodily injury. In the absence of that use and operation of a motor vehicle, there is no bodily injury, and the underlying insured doesn't even fall within coverage. So you can't have both. You can either have the accident in question that gives rise to the question of coverage, but then you've got to look at what that incident was. What was that occurrence? And is it particularly excluded by the exclusion in question? Can I ask you a question about your claim, as I understand it, that in deciding whether this provision is ambiguous, the only thing we can look at is this provision? Doesn't that at least have to be wrong in the following sense? At minimum, don't I have to look at the rest of the contract to see if there is another provision that claws back some of what this provision does? Because that happens all the time, right? So it can't literally be that in deciding whether this provision is covered, is triggered, I can literally not read anything in the contract other than this provision, because at minimum, I have to check if there are other provisions that claw back part of that, right? That's correct, Your Honor. You have to look at related provisions. What you don't have to do, again, back to the asbestos exclusion issue, you don't have to look at unrelated provisions. So if this section, for example, if this was an auto policy, and the auto policy then sought to exclude auto risk, you would look at those things. And then if there was an exception to the exception, I'd have to look at that exception.  But what you don't do is you don't look at completely unrelated exclusions and inject those into a clearly worded unambiguous exclusion that the vast majority of circuits have found is unambiguous, even in cases where negligent entrustment is the cause of action. Do you know of a case that has confronted this situation, where there's an auto policy, an auto provision that doesn't say negligent entrustment, and then there's provisions about other types of conveyances that do say negligent entrustment? Do you know of any case saying that's not ambiguous? Not in the negligent entrustment context, although the case may be. A case like this one, say. Yeah, nothing that's completely on all fours. What I would say, Your Honor, is, and I see my time is up, if I can answer your question.  What I would say is that the Wachovia case is the closest to being on all fours because what it does is it discusses what happens when there are different portions of a policy and how it is improper to look to those to either create an ambiguity or change what the clear terms of this policy would be. Thank you very much. We will hear from Mr. Strong. Good morning, Your Honors, and may it please the Court. My name is Dan Strong, and I'm going to address the imposition of judgment interest on the settlement that was reached between the parties. Simply put, no judgment interest should be applied in this matter as no judgment for money damages was ever entered against a Hartford insurer. And where did you ever make that argument before the district court? Yes, Your Honor, so Magistrate Auld mentioned that in Hartford raised that no judgment was ever entered until it argued it in its reply brief. Right. But we actually raised that argument in the opening brief, which is at Joint Appendix 617. Oh, I'm sorry, actually it's Joint Appendix 607. Hartford argued that, and I quote, the litigation agreement was a negotiated settlement agreement between the parties in the underlying litigation and the defendants. And then later down in that same page, therefore the issue before the court in this action was one for declaratory judgment and enforcement of the litigation agreement, not for judgment in the underlying litigation, which was not filed per the terms of the litigation agreement itself. Okay, but that is at best an argument that when the district judge said you had waived it by not raising it until your reply brief that the district court was wrong to conclude that. Let's posit for the sake of argument that you're right about that. Where in your opening brief do you say the district court was wrong in concluding that we waived this argument? Correct, and, Your Honor, we argued that in, well, and I'll say I mean, I know you argued the judgment issue, but where do you argue the district court was wrong in concluding that we've waived that argument? Correct, so our argument on appeal is that Magistrate Alt was incorrect in issuing judgment interest on Right, but that's an argument that the magistrate judge was wrong on the merits, but the magistrate judge didn't reach the merits. The magistrate judge said I'm not considering that argument because I've concluded you waived it. Now, maybe the magistrate judge was wrong about that, but where in your opening brief do you argue to us that that waiver holding was wrong? Your Honor, I think in our opening brief in pages 37 through 39 is where we address the imposition of You address the imposition, so are you telling me that you don't, in fact, argue that the waiver holding was wrong? I don't recall seeing that in your opening brief. Your Honor, I don't have the opening brief in front of me, but the citation I've provided to you is And if I'm wrong, I apologize. Moving forward, the imposition of judgment interest, there's no ambiguity in the litigation agreement itself. The litigation agreement was a valid settlement agreement entered between the parties. The parties had a meeting of the minds as to the imposition of interest, and this is clear when you consider the potential outcomes that the litigation agreement would have provided, the first being that coverage is found. In Section 5 of the litigation agreement, the parties outlined that in no event shall Harford be required to pay more than $2 million under the Big Boss Excess Policy. In that same section, if coverage is not Well, I have both of them in front of me, and in the litigation agreement it says that it in no way relieves Harford insurers of any obligation to pay money under the policies. And then in the policy it says the Big Boss Excess Policy explicitly provides for payment of pre-judgment and post-judgment interest beyond the terms of this policy. So how does that not preclude your argument? Well, so, Your Honor, in the Lunceford v. Mills case, the insurer's obligation to pay interest on a judgment is governed by the language of the policy. And in looking at the language of the policy on Joint Appendix 148, under the defense and supplementary payments provision, it says when we, Harford, have the duty to defend, we will indemnify the insured for number five is pre-judgment interest awarded against the insured on that part of any judgment covered under this policy. And there was never an award of, there was never an award entered against a Harford insured. The consent judgment was only to be in place if the upfront monies that are considered in the litigation agreement were not paid, and they were, and so that consent judgment goes away. It is never filed, it's never entered, it does not exist against a Harford insured. And to be clear, kind of strengthening that point, is that a voluntary dismissal was filed in the underlying action. And so that is what gets you to the Harford shall not be relieved of an obligation to pay under the policy, is that to the parties in drafting the litigation agreement, myself in drafting the litigation agreement, the intent is to, a section I believe above where you're quoting, it states that withholding or maintaining ripeness of the issues for the appeal, ripeness of the coverage issue for the appeal. And so the intent is to, where there's a voluntary dismissal of the underlying action, that the parties will be able to continue to litigate the coverage issue and have entered the litigation agreement to mitigate the risk to all parties involved, but to litigate the coverage issue on appeal or at the district court to make a determination as to whether coverage existed at all or not. And going back to the potential outcomes of the litigation agreement, if no coverage was found, it's clear the last sentence of section five of the litigation agreement states that there will be no recovery for the appellees on the upfront monies that were paid. And where exactly did you make that argument before the district court? The upfront monies argument. So the argument I know you made on interest before the district court is that we're capped at $2 million. We can't have to pay more. That I agree. You made that argument before the district court. But where did you make the upfront monies argument before the district court? I don't believe that that argument was made before the district court because at the time that we were briefing the judgment interest issue, the parties presented the briefing to the district court on the exclusion, not on the issue of interest because the parties clearly from the litigation agreement did not contemplate the imposition of interest. And then the magistrate all requested that the parties brief the issue of interest. And so I don't believe it was raised at the... And at that point when we're briefing the litigation interest issue, the court has already determined that... Didn't the district court ask you for briefing on interest? On interest, correct. And when the district court asked you for briefing on interest, did you make the upfront monies argument in the briefing that the district court asked for about interest? We did not at that point because at that point... So why isn't that a massive forfeiture? Well, I believe because at that point the issue there is that the coverage had already been determined. And so the argument of that the upfront monies... And so the argument that I'm presenting here in the kind of the comparison I'm making or the outline of the potential outcomes here is that if no coverage had been determined, that there's no... The litigation agreement clearly states that there would be no recovery on those funds. That was not raised at the district court because at that point coverage had been established. The magistrate all had determined that the exclusion did not apply. Finally, the consent judgment looking at joint appendix 241, the consent judgment itself, had it ever been entered, which it would not have because the upfront monies were paid, the consent judgment does not contemplate the payment of interest. There's no award of interest. If the consent judgment had been brought before the underlying court in the state court action, there's no... Accounting for judgment interest in that consent judgment itself. There's a very similar scenario that the North Carolina Court of Appeals had addressed on a... In an unpublished opinion in Winters v. Allen in 2004, the parties resolved their litigation with a pre-trial settlement agreement leaving open the issue for litigation... The issue of judgment interest for the court to decide on a motion. The court issues that the payment of the full policy limit was... Judgment interest would have been applicable to that and the Court of Appeals reversed that saying that there's no authority that the settlement changed the requirement in the policy that a judgment be issued against an insured, which is the same requirement that Harford has in its policy, which is that a judgment be entered against the insured and that is what triggers the obligation for Harford to make a payment under the policy. So we would argue that, as Mr. Beaufort said, that the auto exclusion does not apply. If the auto exclusion applies to bar coverage, if the auto exclusion does not apply, we would request that the court reverse and remand the issue of judgment interest. Thank you very much. Thank you, Your Honor. All right, we will hear next from Mr. Cohen. Thank you. Did I say that correctly? Cowan. Cowan. Thank you, sir.  May it please the Court. My name is Coleman Cowan. Along with my colleague, Caitlin Fudge, I represent the appellees in this matter, Ms. Erica Chambers and her two daughters, who, for purposes of this case, are known by their initials, J.H. and E.H. Ms. Chambers and her two daughters are with us here in court today from North Carolina. This case initially presents the court with the question of whether or not an insurance policy's exclusionary clause, which does not explicitly include claims involving entrustment to others, nonetheless excludes coverage for such claims. Appellants in this case ask the court to rewrite its insurance policy and insert entrustment language in the auto exclusion where Harford chose to leave it out, despite including that language in a separate exclusion in the same policy as well as in an auto exclusion in a separate commercial policy issued to the same insured Big Boss Construction. The district court held Harford to the terms of its insurance policy and gave meaning to all of the provisions in the excess umbrella policy and held that the auto exclusion did not exclude claims for negligent entrustment. Well, but the auto exclusion is not written in terms of which torts are covered. It's written in terms of what conduct is covered. And clearly, part of the conduct in this case is that somebody drove the car and injured your clients. Yes, I would agree that somebody drove a car and injured our clients. And the policy says somebody drives a car and injures the client, that's excluded, right? Not in the context of the entire policy, which North Carolina cases consistently tell us courts look at the entire policy. So your colleague cited a case that actually I don't think he cited in his brief, but I think you might have cited in yours, Farm Bureau Mutual Insurance v. Martin and says, no, that's not the case. If the provision is clear, you don't look to the full policy, you just look to that provision. I think that's what he cited that case for. What's your response to that? I am not familiar, Your Honor, with any case in North Carolina which has said that the court should do what appellants ask this court to do, and that is look at a single provision of an insurance policy in isolation and do not consider any language outside of that isolated provision and do not consider how that provision is used in the context of the policy. No North Carolina reported cases have done that, have done what the appellants ask this court to do. They say Wachovia does that. What would you have us say about Wachovia? The interesting thing about Wachovia, and there's another case from the North Carolina Supreme Court, Woods, eight years later. Wachovia was in 1970, Woods was in 1978. Both of those cases, as they recite the rules of construction, say that the provision has to be construed in context, and in fact, both the Wachovia court and the Woods court did just that. The issues in both of those cases were medical payments coverage provisions and whether or not they could be stacked with different automobile coverages within the same policy. The Wachovia court held that they couldn't, and they did that because they compared it to a limits of liability, a separate provision in the same policy, and concluded that they could not be stacked. What the Wachovia court did is they looked at the provision in the context of the entire policy. Eight years later, the Woods court, the North Carolina Supreme Court and Woods did the exact same thing on a similar issue but came to a different conclusion because there was different policy language. The issue in that case was the same, whether or not medical coverage payments could be stacked when multiple cars were insured under an auto policy. In that case, there was a separate applies separately clause in the auto provision which the North Carolina Supreme Court said once we look at the entire contract and look at the medical payments coverage in context with the applies separately provision, it applies separately and they can be stacked. It's interesting because Wachovia actually says terms must be interpreted in the context of the entire policy unless the immediate context requires otherwise. So this unless the immediate context requires otherwise language, I don't know what that refers to, but could it possibly refer to a situation like here where the explicit exclusion actually covers automobile accidents, this was an automobile accident, so wouldn't that be a situation where an immediate context requires otherwise? I agree with your logic but not your conclusion, respectfully. The context in this case, we have an exclusionary clause which does not include the entrustment to others language. It is included in other provisions in that same policy and a separate policy that should do the same in short. This is the issue that courts across the country have been grappling with for decades from the second, seventh circuit and the standard. When you say this is the issue, what is the issue you're speaking of here? The issue is this, whether or not the language ownership, maintenance, operation and use implicitly also includes the language entrustment to others. This is what the courts have split on. So do you agree with, because I asked the folks on the other side, are you aware of a case that's like this one? And by like this one, what I mean is the auto provision does not say entrustment but other provisions involving aircraft and watercraft do say entrustment. Do you know of a case that confronts that fact pattern? I am not. And I have searched. I imagine you have. And I am not, frankly, Your Honor. The cases, the courts that have dealt with this issue are looking to see what the policy language requires. What was the intent of the parties? Or in North Carolina, what the standard is, what a reasonable insured would understand the coverage to be based on the entirety of the contract. The courts in the standard mutual case in the Seventh Circuit cited by the appellants, as well as the Douglas case out of the Tenth Circuit, the Cone case from the New York Supreme Court, and the Oberlin case from the Supreme Court of Kansas, they all look at this issue that I mentioned earlier, and that is whether or not the entrustment language is specifically included or implicitly included within... Can I ask you this? In order to rule for you in this case, do we have to decide what would happen if the aircraft and watercraft provisions did not include the entrustment language? I don't believe so because those aren't the facts of the case. Right. The reason I say it is, look, if we didn't have this language in the aircraft and watercraft provisions, it strikes me that the builders case is a real problem for you, like a big problem for you. Now, I don't know if that matters here because we do have that language, but, I mean, so could you address why the... So, again, now I want you to imagine this contract does not have that language in the aircraft and watercraft. If that were true, why isn't builders really bad for you? It would make the issue much, much closer. I agree with that. Would it mean you would lose? Not necessarily. We would still argue that the negligent entrustment claim is a different tort and involves a different action of entrusting a vehicle to somebody else. It's the reasoning of the Tenth Circuit in the Douglas case as well as the New York Supreme Court in Cone. But with respect, this is a diversity case. I'm not really sure why I care what the Tenth Circuit says. I care what the North Carolina Supreme Court says, and builders is a decision of the North Carolina Supreme Court. Exactly. And this court is armed with something that the Builders case did not have, and that is clear evidence that Harford Insurance makes a distinction between ownership and agency use. Right, but that's relying on the fact that we've got this in the other provisions. So I'm talking about the hypothetical where we don't have these other provisions. What's the argument that you wouldn't lose there? That cases in North Carolina, specifically the State Capital case and the Davis case, construe provisions differently depending on whether or not they are in a provision extending coverage and are construed liberally, or are they in a provision excluding coverage and they are construed narrowly? I agree and I concede, Your Honor, that the argument might be much more difficult on our side if the aircraft and watercraft exclusion were absent and if the auto exclusion in the commercial policy underlying this policy was absent. If it was just viewed in isolation, yes, it would be a much more difficult argument, but that is something that the North Carolina courts tell us you do not do. You evaluate the policy as a whole and you give meaning to all provisions within the policy. And again, Your Honor, a critical distinction in this case is that Harford has told us they make a distinction between entrustment to others and ownership, maintenance, operation, and use. So I'm assuming there was a separate automobile liability policy given this exclusion, is that right? That is correct. And was the accident covered under that policy by the same insurer? A different insurer to the tune of $100,000, yes. Doesn't that suggest the insured understood that this didn't cover auto accidents and they needed another policy to do that? No, Your Honor. From a reasonable insurer's perspective, if they received these two commercial policies from Harford, one, the commercial general policy, which is not at issue in this case, it is in the record. The commercial general policy has a auto exclusion that clearly by its terms excludes entrustment to others. It includes that language. Then if you look at the excess umbrella policy, which is the one at issue in this case, the auto exclusion is separate from the aircraft and watercraft exclusion, which includes the entrustment claim, but the auto exclusion does not include that language. So if you are a reasonable insured, looking at the contracts that Harford has handed to you, a reasonable understanding would be once I get into the coverage under the excess umbrella policy, which by its terms explicitly states it covers things that are not covered by the underlying commercial policy. The reasonable interpretation by a reasonable insured would be that they are covered for negligent entrustment claims like the one in this case. Would you respond to the question I asked about your colleague about the burden of proof on this issue? Yes. We have the burden of proof on establishing coverage, and then the insurer has the burden of proof of establishing an exclusion. And that raises the issue of the appellant's occurrence argument, where they argue you can't have the same. It's either an occurrence or an exclusion, or it's not an occurrence, and then you have the exclusion. A critical point to raise here is one that we raised in our brief, is that this is an entirely new argument on appeal. If you read Judge Ald's opinion, you will see that it does not reference this issue at all in any way, and the reason it doesn't reference it is because it was never raised. What issue wasn't raised? I'm sorry. The occurrence argument. Appellants argue that all this arises out of a motor vehicle collision. This is the language that triggers coverage, and if it triggers coverage, it should also then trigger the exclusion. This is sort of their approaching formal logic point that something can't be both X and not X at the same time? That's correct, Your Honor. That's correct. I want to make two points on that argument. First is one I just made. This is an entirely new argument raised for the first time on appeal, which Fourth Circuit precedent clearly holds. That argument is waived absent exceptional circumstances, which I would contend are not present in this case. Even if the court was to entertain this argument, we know from the state capital case as well as the Davis case in North Carolina that the exact same language can be interpreted differently depending on whether or not it is in a provision extending coverage as opposed to a provision excluding coverage. In both of those cases, the language at issue was the arising out of ownership, maintenance, operation, and use language. In both of those cases, the North Carolina Supreme Court held that that language in the policy extending coverage triggered coverage because they construed it liberally as a clause extending coverage, but the same language in the exclusion didn't apply because the Supreme Court construed it narrowly. Again, this argument we would contend is entirely new, has been waived, but even if the court considers it, North Carolina, the North Carolina Supreme Court, can consider the same language differently depending on whether or not it's a coverage provision or an exclusionary provision. If I could, I want to make sure I have time to address the interest issue. In this case... Could you specifically address the $2 million cap issue, which is, I think, the one interest argument they've actually preserved? Right. That clause of the litigation agreement just established the amount that would be tendered under the coverage for the policy depending on how the district board ruled on the two policies that were at issue. What was clear, though, is that in the following paragraph, paragraph 6 in the litigation agreement that's already been referenced earlier, the litigation agreement, by its terms, clearly states that it, quote, in no way relieves the Hartford insurers of any obligation to pay money under the insurance policies. If you look at the coverage language in the Hartford policy, it states that it applies to any judgment, in both the pre-judgment provision as well as the post-judgment provision. Addressing the consent judgment issue again, we would contend that this issue has not been properly preserved, but as Judge Auld ruled in the district court, it doesn't matter because it is still a judgment, a consent judgment that was entered into by all parties. And again, we look to the covering language in the insurance policy, which clearly states pre-judgment interest awarded against the insurer on their part of any judgment covered in this policy. The post-judgment interest provision, all interest earned on that part of any judgment within the limits of insurance. So what do we do with this language? In no event shall Hartford insurers be obligated to tender more than $2 million under the big-box excess policy. It's right there in the agreement. Right. And again, that goes to the amount of coverage designated in the policy. But the policy also goes on to state that payments under that section of the policy do not reduce, excuse me, this is the interest, that the interest section states that it applies on top of... But there's no interest section in the agreement. Right. What we wanted to preserve in the agreement, and what I believe both sides agree on, is that the litigation agreement does not change the terms of the insurance policy, which clearly provides coverage or indemnification for both pre-judgment and post-judgment interest. So one final point I'll make on the consent judgment issue and whether or not the appellants contend that one of the reasons interest can't apply to it is that it was never filed. If you read the interest statute in North Carolina, it's 24-5, subsection B, there are two sentences. The first sentence is the one that applies to this case, and it does not require filing of the judgment. It simply states... Excuse me. It states that in any action other than contract, which is what this is, any portion of a money judgment designated by the fact-finder as compensatory damages bears interest from the date the action is commenced until the judgment is satisfied. That's the sentence, the provision, that applies to pre-judgment interest in this case, which is controlled by North Carolina law. There is no requirement that the judgment actually be filed or entered. That is brought home by the next sentence, which doesn't apply to this case but does require that the judgment actually be entered under Rule 58 for things such as attorney's fees. This is how it reads. Any other portion of a money judgment in an action other than contract except the costs bears interest from the date of entry of judgment. Under general statute, Section 18-1, Rule 58, which is entry of judgment. So under your version of things, does interest start to run when your clients filed suit or when the declaratory judgment action was filed? It begins to run when we filed suit back in October of 2019 because, again, if you look at the rationale for why North Carolina courts award pre-judgment interest, it is to compensate the injured person. You understand this. The lack of the use of the funds, whereas the other side has had the benefit of that. What the courts do is they look to the date that the claimants demanded payment for it, which is the date they filed the lawsuit. In this case, that's in October 2nd of 2019. So in conclusion, Your Honors, the district court on the coverage issue held Harford to the language it selected and gave meaning to all provisions of the Harford policy and held that the auto exclusion did not exclude negligent entrustment claims. The appellees asked this court to do the same. On the interest issue, the district court held Harford to the terms of its policy and the terms of the litigation agreement and awarded pre-judgment and post-judgment interest. Appellees asked this court to do the same. Thank you. Mr. Balfour, you have some rebuttal time. Your Honors, just a couple points in the two minutes that I have left. First, if I can address the question of the Wachovia case, and Judge Berner, you took the words out of my mouth as I was writing down immediate context. The Wachovia case says that where immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy. The immediate context of the bodily injury, or excuse me, the auto exclusion here, shows that bodily injury arising out of ownership, use, or operation of a vehicle is clearly excluded. Turning to the cases that were specifically cited, the Woods case. The Woods case actually has an additional bit of language which is important for this court, which is that courts may not, under the guise of ambiguity, rewrite the contract or impose liabilities not bargained for. What was bargained for here was an excess commercial general liability policy, not an auto policy. The standard mutual case that has been discussed, I know that's a Seventh Circuit case, but what it does also say is that 28 of the 31 jurisdictions to have addressed the question of whether this exclusion is unambiguous have found that it is unambiguous. And when you say this exclusion, you mean this exclusion in a policy? The auto exclusion, Your Honor. Not this actual policy, a policy that's somewhat different from this actual policy. Now I know you argue it doesn't matter, but it's not this policy. What I would say, Your Honor, is those cases don't discuss whether other exclusions, be they asbestos or otherwise, have any impact on an unambiguous exclusion for the use of an automobile. Turning to the judgment interest issue, there's just two follow-up points, and I have daughters who love the movie Wicked, and this definitely feels a bit like the no good deed goes unpunished part of the argument. This was a settlement agreement that very clearly says on joint appendix, page 209, that in no event will Hartford Mutual be obligated to pay more than $2 million if we lose. We reached this agreement because it was a more efficient way to get these underlying plaintiffs an answer they needed on available coverage. If the conclusion is that pre-judgment interest is now going to be imposed by a federal district court on an underlying state court action where a settlement has been reached, it has a real possibility to stifle the ability for insurers and for underlying plaintiffs to work collaboratively to find economical and judicially efficient results, and that should not be overlooked as this court is weighing the substantive arguments that we've talked about today. Thank you, counsel. Thank you. We will come down and greet counsel and then have an extremely brief recess. This honorable court will take a brief recess.
judges: Toby J. Heytens, Nicole G. Berner, John A. Gibney Jr.